NelsON, J.,
delivered the opinion of the court.
In a petition filed in the name of Barbara Maurer and Anna Maurer, minors, by their next friend, Jos. Ruohs, addressed to the Judge of the County Court of Hamilton county, and sworn to December 23, 1868, by Joseph Ruohs, the removal of the guardian of petitioners, was prayed for; and among the causes assigned for the removal, it was alleged that the guardian “has had in his family a girl, who is now probably over sixteen years of age, who came to live with him at about the age of thirteen years, and has remained in his family ever since. Her reputation is ruined, and she is now an example of shame and prostitution/’ Catherine Baker, claiming to be the girl thus alluded to, brought this suit, by her next friend, on the 28th of January, 1869; and in her declaration for libel, charges that she is a female under the age of twenty-one years; that she had no interest in, nor connection with, the proceeding in the County Court; that the matter published is false and defamatory; and that the words impute that she had been and was guilty of divers acts of fornication and adultery, and had become a common prostitute and harlot.
The defendant below filed a special demurrer to the declaration, in which he alleges, as cause of demurrer, that the declaration shows that the alleged *398 libel was a matter included in, and part of, a judicial proceeding, and therefore not actionable. The demurrer being overruled, defendant filed a plea of not guilty, and also a special plea of justification, in which he alleged that the petition was a judicial proceeding; that the words were used and written to show that the guardian ought not to retain the guardianship ; that he, the defendant, had received information that justified him in making the charge included in said' words; that he used the words in said judicial, proceeding in good faith and without malice, and that they were never published, unlawfully or •otherwise.
The plea of justification was stricken out on plaintiff’s motion, and the cause was afterwards submitted to a jury upon the plea of not guilty, and a notice, under the statute, of the real defense, substantially embodying the matter of the plea of justification. They found the issue in favor of the plaintiff, and assessed her damage sat $5,000. Judgment was rendered accordingly, and a new trial having been refused, the case was regularly brought to this court by the plaintiff in error.
On the trial of the cause, his Honor the Circuit Judge was requested to instruct the jury, in behalf of the defendant, that “if the words published and charged as constituting the libel were used in a judicial proceeding, it devolves on the plaintiff to prove express or actual malice fin the defendant before she can recover.”
In answer to this proposition the court, referring *399 to the defendant, instructed the jury as follows: “Whether he is protected by the alleged legal proceedings, is a question of law to be determined by the court; and as to. this last question, the court is of opinion, and so charges you, that the plaintiff in the suit being no party to the record, exhibited and used as evidence (meaning the record containing the petition and other proceedings in the County Court) of the judicial proceedings in which it is alleged the libelous words were employed, the defense of privileged communication ca,n not avail. In this view of the case, you will look to the evidence, and determine from it whether the defendant wrote and published the words laid down in the declaration. If so, were they used in reference to the plaintiff? If ■ not, your verdict ought to be for the defendant. If they were, then you ought to find for the plaintiff.”
In the consideration of this charge, it may be remarked that by s. 2493 of the Code of this State, the County Court has full power to take cognizance of all matters concerning minors and their estates, and that, without reference to more special provisions in the ensuing sections, the power to appoint and remove guardians is deducible from this section alone. Section 2520 makes it the duty of the grand jury to present all abuses, mismanagement and neglect of guardians, and s. 2521 provides that the court shall inquire into the same and make such rules and orders for the removal of guardians and appointment of others, as the court shall think fit, in certain cases therein enumerated, and among others, “ where he neglects to edu *400 cate or maintain bis ward, according to his degree and circumstances.” In its broadest sense, the word “education” comprehends not merely the instruction received at school or college, but the whole course of training, moral, intellectual and physical, and with a view to the highest and best interests of minors, we hold that it is so used in the statute. While the powers of the Chancery Court over the persons and estates of infants is not abridged, the power of the County Court to appoint and remove guardians may be properly exercised upon the principles governing courts of equity; and if the guardian is guilty of gross ill-treatment of. his ward, or is in constant habits of drunkenness and gross debauchery, or professes atheistical or irreligious principles, or his domestic associations are such as tend to the corruption and contamination of the ward, or he otherwise acts in a manner injurious to the morals or interests of the ward, the County Qourt may, in these and similar cases, remove him and appoint a suitable person in his stead: See 2 Story’s Equity, s. 1340. So, if the guardian does not faithfully discharge his trust in the management of the ward’s estate, he may be removed; and it was long since determined by this court that the conversion of real into personal estate, by a sale at which the guardian himself became the purchaser, although at the full value of the property, wras sufficient cause for his removal by the County Court, in a case where there was no necessity for the conversion. See ex parte Crutchfield, 3 Yerg., 337-8.
It was also determined at an early period in this *401 State, and the ease has been ever since followed, that a court of chancery, for the benefit of infants, will permit any person, upon his own judgment, at his own will, in the support of some right or the resistance of- some injury, to exhibit a bill in chancery in behalf of an infant, even without his knowledge or consent, “only holding over the bringer of the suit the check of costs”: Stephenson v. Stephenson, 3 Cooper’s Hay. Tenn. R., 89, foot p. There is no reason why this rule shall not apply to a proceeding by petition in the County Court for the removal of a guardian, and no substantial reason exists why such a petition may not be presented in the name of the minors by their next friend, or in the name of any citizen interested, or assuming to be interested, in behalf of the infants, as in either case the person actually presenting the petition could be held liable for costs.
It follows, therefore, that the plaintiff in error had a perfect right to present the petition in the names of the infants by him as their next friend, to be qualified to the truth of its contents, and that when the petition was so presented and filed, it became a regular judicial proceeding. It was not essential to its nature that he should become a party to the record. By acting in the character of next friend he made himself so far a party, that according to the long established practice of our chancery courts, he became liable for costs, and was, by analogy, so liable in the County Court.
Having the undoubted right to present the petition, the question recurs, was the reason assigned by the *402 plaintiff in error to the County Court for the removal of the guardian, such a reason as he might lawfully assign, and his petition a privileged communication within the meaning of the law? If a guardian may be removed because “his domestic associations are such as tend to the corruption or contamination of the ward,” upon what principle is it that the person seeking the removal may not even name his associates and cause their character to be inquired into? How is the County Court to guard the infant against the corruption or contamination unless its nature is stated and the malign influences, real or imaginary, carefully scrutinized and investigated? And upon what principle is it that the person or persons who are supposed to exert, such influences shall be made parties to the suit ? There are many cases in which the rights and character of persons who are not parties to the suit become, collaterally, the subject of inquiry, and from the nature of the investigation and the necessity of the case, it is impossible that the character of the guardian and the nature of his associations can be inquired into without involving, to some extent at least, the reputation of others. Such inquiries, from their nature, must often be painful and delicate, and can not be invoked without restriction or responsibility, as will be presently stated; but the right to make them, in the course of a proper judicial proceeding, is unquestionable. The right, under proper qualifications and limitations, exists between individuals, to give information and make inquiry of a similar nature; for, it has been properly said every one who believes *403 himself to be possessed of knowledge which, if true, does or may affect the rights and interests of another, has the right, in good faith, to communicate such, his belief, to that other; and, as an illustration, it is observed that, “if A believes that B is, or is intending, to rob C, he has the right to comunícate his belief to C, without waiting for C to inquire on the subject, and if in so doing he injures B, B is without redress. The exigencies of society require that such a right should exist. A’s duty to B is simply not wmeoessarily to injure him. This right must be exercised, as every other right is required to be exercised, in good faith, and all communications made in the exercise of this right are conditionally privileged.” Townshend on Sian, and Lib., 311.
His Honor therefore erred in instructing the jury that the communication was not privileged because the defendant in error was not a party to the record ; and in refusing to give the instruction requested — that express or actual malice must be shown on the part of the petitioner.
As this case must be remanded for a new trial, it is proper to state, briefly, so much of the law on the subject of privileged communication as is applicable to the facts appearing in the record.
In the case of Davis v. McNees, 8 Hum., 40, 43 “it appeared in proof that McNees was apprehended, and on trial before justices of the peace, on a charge of perjury, prosecuted by Davis. The magistrates consulted, and considered that the proof was not strong-enough. One of them observed to Davis, the prose *404 cutor, they would have to tax him with the costs, and undertook to explain to him that the mistake of McNees was not material to the issue. Davis* said he did not know how they could do that; McNees had sworn falsely and he had proved it,” &c. For the speaking of these words, as imputing the crime of perjury, McNees brought his action of slander, and obtained a judgment, which was reversed by this court, because it appeared that at the time of the speaking Davis was still in custody; that the judgment of the justices had not been written down; that they were about to tax Davis with the costs, and that he used the words in his defense in the course of a judicial proceeding. This view of the law is fully sustained in a recent and valuable American treatise. See Townsh. on SI. and Lib., 273.
The question as to privileged communications was much more carefully and elaborately considered in Lea v. White, 4 Sneed, 111, 115. That was an action for libel in a, return to a writ of habeas corpus for two apprentices. Judge Harris, in delivering the opinion of the court, referred to the authorities, and took a distinction between communications conditionally or absolutely privileged — the former not amounting to defamation until it appears that the communication had its origin in actual malice in fact; the latter depending in no respect upon their bona fides, but upon the occasion, and the only question in regard to them being whether the matter, complained of was- pertinent to the occasion. In that case it was said, that “the proceedings connected with the judicature of the country *405 are so important to the public good, that the 'law holds that nothing which may be therein said with probable cause, whether with or without malice, can be slander; and, in like manner, that nothing written with probable cause, under the sanction of such occasion, can be a libel”: Ibid, 114. It was further declared in that case, that “the parties, or their representatives, are entitled to state anything which, though not strictly relevant, may be fairly supposed by them to weigh with the court ” : Ibid, 115.
In the learned treatise already referred to, the subject of privileged communications and publications is considered at greater length and with much learning and accuracy, and the different classes of such publications are very fully treated of; but it is sufficient for the purposes of this case to adopt, as we do, two definitions of the author. “ By an absolutely privileged communication,” he says, “is not to be understood a publication for which the publisher is in nowise responsible ; but it means a publication in respect of which, by reason of the occasion upon which it is made, no remedy can be had in a civil action or libel. A conditionally privileged communication is a publication made on an occasion which furnishes' a prima facie legal excuse for the making of it, and which is privileged unless some additional fact is shown which so alters the character of the occasion as to prevent it furnishing a legal excuse”: Townshend on SI. and Lib., 248, s. 209.
Although there are authorities which would, perhaps, sustain the petition to the County Court as falling *406 within the definition of absolutely privileged communications, this court is of opinion that a distinction should be taken between statements made in the course of judicial proceedings relative to the parties thereto and those which relate to strangers to the record; and that the protection of private character, as well as the peace of society, require that imputations against persons having no connection with the judicial proceeding should, even when properly relating to such proceeding, be considered as falling within the class of conditionally privileged communications. It is true, as a general proposition, that a communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminating matter which, without this privilege, would be slanderous and actionable: Townshend on SI. and' Lib., 250. It is equally true that "for any defamatory matter contained in a pleading in a court of civil jurisdiction no action for libel can, as a general rule, be maintained; the power possessed by courts to strike out scandalous matter from the proceedings before them, and to punish as for a contempt, being considered a sufficient guarantee against the abuse of this privilege”: Ibid, 275, 276. But the author quoted correctly adds that "whatever may be the reason, it seems certain that where there is a perversion of the right, the policy steps in and controls the individual right of redress”: Ibid, 276-7.
We hold, therefore, that the allegations contained *407 in the petition are prima facie privileged, being pertinent to the inquiry sought to be had in the County Court; but that, as the defendant in error was a stranger to the record, such of the allegations, if any, as related to her, are only conditionally privileged, and that it must be left to a jury to determine whether the plaintiff below is the person referred to in the allegations, and. whether they were made in good faith, with probable cause, and under such circumstances as reasonably created a belief in the mind of the plaintiff in error that they were true. If so made, the plaintiff below can not recover in this action, for there would be neither malice in law nor malice in fact in the publication. If, upon the contrary, the words in the petition had reference to the defendant in error, and were inserted therein without reasonable and probable cause to believe they were true, then the plaintiff below would be entitled to a recovery of damages.
In Lea v. White, 4 Sneed, 115, already cited, it was said that the question whether there be or be not reasonable or probable cause, may be for the jury or not, according to the particular circumstances of the case; and we but follow that decision in directing that this case shall be remanded and submitted to a jury under the instructions above indicated.
Other questions have been presented in argument, but we have deemed it sufficient to consider the controlling questions in the case.
Reverse the judgment and remand the cause.